AO 91 (Rev. 11/11)  Criminal Complaint

JMR/EC

# UNITED STATES DISTRICT COURT
### for the
Southern District of Ohio

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.  2:26-mj-268 |
| | ) | |
| | ) | |
| Salio BARRY | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___11/25/2024 through 09/03/2025___ in the county of _____Franklin_____ in the

___Southern___ District of _____Ohio_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1591 | Sex trafficking of a minor and sex trafficking by force, fraud or coercion |
| 18 U.S.C. § 2252A | Distribution, transportation, receipt, and/or possession of child pornography |
| 18 U.S.C. § 2421 | Transportation for prostitution |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Trace Way, Special Agent (HSI)
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  April 27, 2026

City and state:  Columbus, OH

_____
Kimberly A. Jolson
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

In the matter of:

|  |  |  |
|---|---|---|
| | : | |
| United States of America | : | Case No.:  2:26-mj-268 |
| v. | : | |
| Salio Gassim Barry | : | |
| 632 Canterbury Way | : | Magistrate Judge: |
| Columbus, Ohio 43213 | : | |

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Trace Way (Your Affiant), a Special Agent (SA) with Homeland Security Investigations (HSI), being first duly sworn, hereby depose and state as follows:

### INTRODUCTION

1.     I, Special Agent Trace Way (your affiant), make this affidavit in support of a criminal complaint to arrest Salio G. **BARRY (BARRY)** for violations of 18 U.S.C. § 1591 – sex trafficking of a minor and sex trafficking by force, fraud or coercion, 18 U.S.C. § 2252A – distribution, transportation, receipt, and/or possession of child pornography, and 18 U.S.C. § 2421 – transportation for prostitution. Since this affidavit is being submitted for the limited purpose of securing a criminal complaint and arrest warrant, your affiant did not include each and every fact known concerning this investigation.  Your affiant did not withhold any information or evidence that would negate probable cause.  Your affiant set forth only the facts that are believed to be necessary to establish probable cause that **BARRY** committed the violations listed above.

2.     I am a Special Agent with HSI assigned to the Office of the Assistant Special Agent in Charge, Columbus, Ohio, and I have been a Special Agent since November 2019. I am currently assigned to the Central Ohio Human Trafficking Task Force investigating matters involving human trafficking, which can involve other matters including prostitution, drug trafficking, and child exploitation.  As part of my professional experience, I have participated in State and Federal investigations involving human trafficking, narcotics trafficking, prostitution, the exploitation of minors, illegal possession of firearms, and money laundering.  I have participated in the execution of state and federal search and seizure warrants and have seized or assisted in seizing contraband and evidence, including firearms, ammunition, narcotics, currency, and documentary evidence,

which includes electronically stored documents.

3.     Prior to becoming a Special Agent with HSI, I served as a U.S. Border Patrol Agent for approximately two years and a Customs and Border Protection Officer for approximately four years; having begun my federal law enforcement career in August 2013. As a Special Agent my responsibilities and duties include the investigation and enforcement of federal laws and regulations related to customs and immigration violations, including but not limited to narcotics, financial crimes, fraud, human trafficking, and violations of the Immigration and Nationality Act. While performing my duties as a Special Agent, I have participated in various investigations involving human trafficking-related and narcotics trafficking-related offenses, including violations of 21 U.S.C. §§ 841 and 846, and 18 U.S.C § 1591. I have received criminal investigative training, including 26 weeks of intensive training at the Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia. This training included instruction on the methods used by criminals to violate the laws of the United States and evade detection by law enforcement. I have had formal and on-the-job training in matters involving human trafficking, narcotics trafficking, and child exploitation from instructors, supervisors, and colleagues.

4.     As a Special Agent, I am authorized to investigate violations of the laws of the United States and to execute warrants issued under the authority of the United States.

### FACTS SUPPORTING PROBABLE CAUSE

5.     On January 23, 2026, a Nationwide Children's Hospital Child Assessment Center (NCH CAC) care manager contacted agents with the Central Ohio Human Trafficking Task Force (COHTTF). The care manager stated she had met with an 18-year-old adult female patient (herein after Adult Victim 1), who disclosed being a victim of human trafficking.  Adult Victim 1 also provided the name of the person who trafficked her as "Skrilla."

6.     The care manager recognized similarities in the types of exploitation Adult Victim 1 described as well as the alias of her trafficker from a previous case that she had reviewed.  More specifically, the other tip was referred by NCH CAC to the COHTTF in the fall of 2025 and involved a female minor (herein after Minor Victim 1), who was born in August of 2009. Minor Victim 1 had disclosed information in a forensic interview about an individual who had trafficked her that went by the street name "Skilla." The care manager also noted that both victims disclosed they met the suspect via Instagram.

7.     On February 6, 2026, the NCH CAC care manager met with Adult Victim 1 who

signed a release of information and agreed to meet with COHTTF agents later. Adult Victim 1 disclosed that the real name of "Skrilla" was Salio **BARRY** and he had been arrested and charged in Atlanta, Georgia with trafficking her. The care manager was able to confirm **BARRY** was arrested on September 3, 2025, in DeKalb County, Georgia and charged with Trafficking of Persons for Sexual Servitude.

8. Your affiant confirmed that on or about November 25, 2025, **BARRY** was charged in the DeKalb County Superior Court of one count of Trafficking of Persons for Sexual Servitude, in violation of the Official Code of Georgia Annotated Section 16-5-46(c) in the DeKalb County Superior Court under case number 25CR4663-10. This charge was related to an incident on or about September 3, 2025, in which **BARRY** was encountered by law enforcement at a Motel 6 in Decatur, Georgia with AV1.

9. Law enforcement with COHTTF received information about the Georgia incident and learned on September 3, 2025, Adult Victim 1 reached out to the National Human Trafficking Hotline while in Decatur, Georgia, and reported she was being trafficked at the Motel 6 located at 2572 Candler Road Room #408, Decatur, Georgia. On September 3, 2025, DeKalb County Police Department arrived at the motel and made contact with **BARRY** in room #408. Dekalb County Police detained **BARRY** and recovered Adult Victim 1 from the hotel room.

10. A Dekalb County Special Victims Detective conducted an interview with Adult Victim 1. Adult Victim 1 stated she had been trafficked from the state of Ohio to Atlanta. Adult Victim 1 stated she had been with over twenty males providing sexual services in exchange for money. Adult Victim 1 stated she met **BARRY** online and at the time, Adult Victim 1 was staying in foster care. **BARRY** agreed to take care of Adult Victim 1 and provide her with a job and a place to live. Adult Victim 1 stated **BARRY** arranged her commercial sex advertisements through a website called Megapersonals. Adult Victim 1 was asked if she ever performed any sex acts with **BARRY** and she stated that he made her perform oral sex on him. Adult Victim 1 stated **BARRY** took all the money made from her "dates" and only provided her with housing, food, and condoms. Adult Victim 1 stated **BARRY** would use harsh profanity towards her and call her a "bitch" which she thought was intimidating. Adult Victim 1 stated that she was too afraid to leave during the time she was with **BARRY**.

11. On or about February 12, 2026, agents met Adult Victim 1 at The Center for Family Safety and Healing to conduct an interview. Adult Victim 1 stated she met **BARRY** via Instagram

and **BARRY** reached out to Adult Victim 1 via Instagram messaging on July 23, 2025. **BARRY's** Instagram account at the time was under the username "skrill.talk." Adult Victim 1 was able to provide investigators with screenshots of conversations with **BARRY** from Instagram and text message, which confirmed **BARRY** recruited her for prostitution and discussed travelling with Adult Victim 1 from state to state. Adult Victim 1 and **BARRY** eventually started communicating through text message and phone calls. **BARRY's** phone number at that time was 854-276-8643.

12. In August of 2025, **BARRY** and Adult Victim 1 started communicating primarily via text message. The text thread began with Adult Victim 1 sending **BARRY** pictures and videos of herself, some nude and some partially clothed, which Adult Victim 1 stated **BARRY** had requested. **BARRY** texted Adult Victim 1 a screenshot of a commercial sex site email requesting additional documents to verify the age of the person listed in the commercial sex advertisements. **BARRY** then directed Adult Victim 1 to email the commercial sex site a document to verify her age. Adult Victim 1 then sent **BARRY** a screenshot showing she completed the task.

13. Additional messages showed **BARRY** advised Adult Victim 1 what rates to charge for what sex acts and explained she needed to have the men flash their genitals to confirm they were not law enforcement. **BARRY** also provided a login and email for Adult Victim 1 to login to megapersonals.eu, an online website primarily dedicated to the sale of commercial sex. **BARRY** told Adult Victim 1, "This is a different lifestyle you entering in, riding foreign state to state." When Adult Victim 1 expressed hesitation to **BARRY**, he attempted to convince her to continue with him.

14. Adult Victim 1 stated **BARRY** told her she had to send him the money she had to his Cash App to get started. Adult Victim 1 complied, and the next day **BARRY** picked her up in Columbus, Ohio and took her to a storage unit to store all of her belongings. Adult Victim 1 stated **BARRY** then rented a hotel room at the Motel 6 located at 750 Morse Rd Columbus, Ohio 43229, within the Southern District of Ohio, for her to engage in commercial sex acts. **BARRY** would rent hotel rooms in different states for Adult Victim 1 to engage in commercial sex acts, and he would collect all of the proceeds. Adult Victim 1 stated if hotel rooms were not rented, **BARRY** would have Adult Victim 1 meet with the sex buyers and do outcalls or car dates. Your affiant knows from training and experience that car dates and outcalls are when the provider meets or travels to the client for the purposes of engaging in the sex act.

15. Adult Victim 1 stated **BARRY** made her work from 9:00 am until 6:00 am and

there were times when she wasn't allowed to eat or shower. Adult Victim 1 explained **BARRY** would eat around her knowing she could smell the food and see him eating, but she wasn't allowed to eat. Between August 30, 2025, and September 3, 2025, **BARRY** transported Adult Victim 1 to multiple states to engage in commercial sex acts. **BARRY** created and controlled the websites where Adult Victim 1's commercial sex ads were posted, and she wasn't allowed to keep the proceeds from the sex acts she engaged in under his direction or supervision.

16. A search through a law enforcement database of a prior phone number belonging to Adult Victim 1 and ending in -6469 resulted in approximately thirty-nine sexual advertisement posts being found. The posts contained images and videos of Adult Victim 1 and spanned from August 27, 2025, through September 4, 2025. Adult Victim 1's first post had a location in Columbus, Ohio and her last post had a location in Atlanta, Georgia. These ads corresponded with Adult Victim 1's statement and the call to the hotline in September of 2025. On September 1, 2025, Adult Victim 1's advertisement location was in Detroit, Michigan.

17. Law enforcement also identified another phone number, 380-215-9833, attributed to **BARRY**. That same phone number was associated with approximately sixty online commercial sex advertisements. The advertisement locations varied from Columbus, OH, Washington, D.C., New York (multiple cities), New Jersey (multiple cities) and Chicago, IL.

18. An additional search within a law enforcement database was conducted on the number **BARRY** used to communicate with Adult Victim 1, telephone number 854-276-8643. The search revealed approximately twenty-seven online commercial sex advertisements. The posts began in approximately March 20, 2025, and went through May 30, 2025. The advertisements varied in locations from Columbus, OH, Cincinnati, OH, Atlanta, GA, and Miami, FL.

19. Due to the information provided by Adult Victim 1, agents looked further into Minor Victim 1's disclosure involving "Skilla." During Minor Victim 1's forensic interview on October 2, 2025, she disclosed she met a pimp named "Skilla" who had her selling sex for money. Minor Victim 1 stated she met "Skilla" through Instagram and he messaged her asking if she wanted to make money. "Skilla" had Minor Victim 1 take pictures of herself to send to him so he could advertise Minor Victim 1 on a website. "Skilla" would come to her house and pick her up and then transport her to different places to meet with men, where she would engage in sex acts for money. "Skilla" would take some of the money and she was able to keep some. Minor Victim 1 stated she was 15 years old at the time.

20. Agents sent a subpoena to Megapersonals for an advertisement posted on November 25, 2024, and November 26, 2024. The phone number linked to the advertisement was 614-780-2532. The advertisement depicted a series of images and one video depicting Minor Victim 1. One of the images, for example, depicted Minor Victim 1 exposing her breasts and buttocks. The video attached to the advertisement depicted Minor Victim 1 shaking her buttocks and exposing her nude vagina. At the time the advertisement was posted, Minor Victim 1 would have been 15 years old. In a follow-up request to Megapersonals, law enforcement learned that the account and advertisement information relevant to this specific posting could not be provided because it was outside the retention period.

21. Your affiant completed an open-source search for the phone number associated to the ad featuring Minor Victim 1 ending in -2532 and found it was a phone number that resolved to TextMe. Your affiant knows TextMe to be a mobile application that works off wi-fi and provides a secondary phone number for unlimited texting, voice and video calling without a cellular plan. On February 27, 2026, TextMe responded to a subpoena with user information for -2532 telephone number which was noted as followed:

| | |
|---|---|
| First name: | Salio |
| Last name: | Barry |
| Display Name: | Salio |
| Email: | Vsalio@icloud.com |
| Account device history: | Nov. 26, 2024, 3:03 am to Nov. 26, 2024, 3:15 pm (UTC)[1]. |

22. Your affiant further noted that the first commercial sex advertisement depicting Minor Victim 1 was posted on November 25, 2024, at 10:57 EST, which was less than one hour after **BARRY** signed up for the TextMe number.

23. On or about February 16, 2026, an Ohio Bureau of Criminal Investigations (BCI) Criminal Intelligence Analyst (CIA) completed a hotlist for **BARRY'S** telephone number, 380-215-9833. A hotlist is a spreadsheet used to compile and identify the subscriber's top contacts. Your affiant was able to complete a search within the spreadsheet for phone number 614-780-2532, the number linked to the ads featuring Minor Victim 1 and noted it was in contact one time with **BARRY's** phone number, 380-215-9833, on November 25, 2024. This was the same day the ad featuring Minor Victim 1 was posted.

---

[1] UTC (universal time coordinated) is five hours ahead of EST (eastern standard time).

24. COHTTF agents met with Minor Victim 1 on or about March 4, 2026. Minor Victim 1 minimized some of the prior details she had disclosed related to her victimization but was able to identify "Skilla" as **BARRY**. During the interview, Minor Victim 1 stated that in November of 2024, **BARRY** took her to a Red Roof Inn located in downtown Columbus, and while they were at the Red Roof Inn, multiple men came to the room for the purpose of engaging in sexual activity with Minor Victim 1. Minor Victim 1 stated **BARRY** also took her to meet men outside in vehicles and to one apartment. Minor Victim 1 believed **BARRY** rented the room with his own card. Minor Victim 1 also stated **BARRY** provided marijuana to her during this time.

25. On or about March 5, 2026, agents served multiple subpoenas to Red Roof Inn for information related to **BARRY**. Red Roof Inn provided information in response to the subpoenas including hotel guest folios for **BARRY**. These folios included a guest folio for **BARRY** for a stay at the Red Roof PLUS+ Columbus Downtown-Convention Center, located at 111 E Nationwide Boulevard, Columbus, Ohio 43215. The folio showed a check-in date of November 25, 2024, and a check-out date of November 26, 2024. The room number was listed as Room 504 and the reservation included two guests. Your affiant noted that this hotel reservation was consistent with Minor Victim 1's disclosure as well as the dates of the online commercial sex advertisements, which featured images and a video of Minor Victim 1 utilizing the TextMe phone number 614-780-2532, linked to **BARRY**.

26. Based upon the foregoing, your affiant submits that there is probable cause to believe that Salio **BARRY** has committed the violations of 18 U.S.C. § 1591 - sex trafficking of a minor and sex trafficking by force, fraud or coercion, 18 U.S.C. § 2252A – distribution, transportation, receipt, and/or possession of child pornography, and 18 U.S.C. § 2421 – transportation for prostitution. Therefore, your affiant respectfully requests this court issue a criminal complaint and arrest warrant.

Respectfully submitted,

Trace Way
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me on

_____

Kimberly A. Jolson
United States Magistrate Judge